UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Brian Crabtree, | Civ. No. 21-2596 (WMW/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Clearwater County Sheriffs Office, Larry Olson, and Travis Iverson, | |
| Defendants. | |

---

Brian Crabtree, Minnesota Correctional Facility, 7600 525th St., Rush City, MN 55069, *pro se*.

---

BECKY R. THORSON, United States Magistrate Judge.

This matter comes before this Court on Plaintiff Brian Crabtree's (1) Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983 (Doc. No. 1 ("Complaint")); and (2) Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. No. 2 ("IFP Application").) For the following reasons, this Court recommends dismissing the Complaint without prejudice for failure to state a claim and recommends denying the IFP Application as moot.

**I.     BACKGROUND**

The Court received the Complaint and IFP Application on December 2, 2021. (*See* Compl. 1; IFP Appl. 1.)  The Complaint's caption names three defendants: (1) the Clearwater County Sheriff's Office; (2) Larry Olsen, whom Crabtree refers to as Clearwater County's sheriff; and (3) Travis Iverson. (*See* Compl. 1.) In a complaint

portion asking Crabtree to list this action's defendants, Plaintiff also includes entries for "Clear Water Prosecutor" and "Rouso County" (the latter of which the Court construes as an attempt to name Roseau County). (*Id.* at 4.)

The Complaint's factual discussion is sparse—in all, Plaintiff includes four substantive allegations. (*See id.*) These read as follows: "Larry Olson took my truck no reason winter of 2020"; "Prosecutor charged me robery dropped charges"; "Travis Iverson said I assaulted him he lied"; and "Rouseo Cty dismissed 5th degree possession." (*Id.* (errors in original; capitalization amended).)

Mailings that the Court received from Crabtree on December 13, 2021, and January 18, 2022, provide more context. (*See* Doc. No. 5 ("First Mailing"); Doc. No. 8 ("Second Mailing").) As the Court understands it, Crabtree claims that in December 2020, Olson had Crabtree's truck towed from Roseau County to the "Clearwater County Impound." (*See* First Mailing 1; Second Mailing 1.) Olson allegedly did this without "seize papers" or a "search warr[a]nt," making the tow illegal. (Second Mailing 1; *see also* First Mailing 1.) Crabtree says that the vehicle seizure "ruined [his] life," causing him to lose a job as well as the truck itself. (Second Mailing 1.) As for Iverson, Crabtree states that Iverson's "[wrongful] accusations" in November 2019 caused Crabtree to go to jail for aggravated robbery, though the case was apparently later "dismissed by [the] prosecut[o]r." (*Id.*; *see also* First Mailing 1.) Finally, Crabtree—presumably discussing the same incident—alleges that Clearwater County charged him with aggravated robbery "with out evidence," for which he "sat 90 days in jail." (Second Mailing 1; *see also* First Mailing 1.)

For relief, Crabtree seeks $4.25 million in damages: $3 million from the "Clearwater Sheriff"; $200,000 from Roseau County; $150,000 from Iverson; and $1 million from Olson. (Compl. 5.)

## II.   ANALYSIS

### A.   Pleading Standards

Crabtree did not pay this action's filing fee, but instead sought leave to proceed *in forma pauperis* ("IFP"). The IFP Application suggests that Crabtree qualifies financially for IFP status. But under the federal statute governing IFP proceedings, "notwithstanding any filing fee, or any portion thereof, that may have been paid," a court overseeing an IFP action "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2)(B)(ii).

To determine if the Complaint states a claim on which a court can grant relief, this Court must accept the Complaint's factual allegations as true and must draw all reasonable inferences in Crabtree's favor. *See, e.g.*, *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008) (quoting *Reis v. Walker*, 491 F.3d 868, 870 (8th Cir. 2007)). A complaint's factual allegations need not be detailed, but must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing a complaint's sufficiency, a court may disregard legal conclusions couched as factual allegations. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Courts are to construe *pro se* complaints

liberally, but such pleadings still must allege sufficient facts to support the claims advanced. *See, e.g.*, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

### B.   Official-Capacity Claims

The Complaint states that Crabtree brings this action under 42 U.S.C. § 1983. (*See* Compl. 1.) Section 1983 claims come in two forms: individual-capacity claims and official-capacity claims. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25–27 (1991) (discussing differences); *Kentucky v. Graham*, 473 U.S. 159, 165–68 (1985) (same). Any claims against a government entity itself must be official-capacity claims. This Court thus construes Crabtree's claims against the Clearwater County Sheriff's Office as being official-capacity claims against Clearwater County;[1] similarly, this Court construes his claims against Roseau County as being official-capacity claims as well.

Crabtree also brings claims against two individuals presumably employed by municipal governments: Olson (as a county sheriff) and the unnamed "Clear Water Prosecutor." Unlike § 1983 claims against government entities, § 1983 claims against individuals can theoretically proceed as individual-capacity claims. But the U.S. Court of

---

[1]   To the extent that Crabtree actually seeks to sue the sheriff's office itself, that is a nonstarter: sheriff's departments are not legal entities amenable to suit. *See, e.g.*, *Melillo v. Melillo*, No. 20-CV-1777 (PJS/DTS), 2020 WL 6797368, at *2 (D. Minn. Nov. 19, 2020) (citing *De La Garza v. Kandiyohi Cty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (per curiam)), *report and recommendation adopted*, 2021 WL 373451 (D. Minn. Feb. 3, 2021); *Frei v. Gilsrud*, No. 15-CV-3673 (PJS/JJK), 2015 WL 7424732, at *2 (D. Minn. Oct. 28, 2015) (citing cases), *report and recommendation adopted*, 2015 WL 7428549 (D. Minn. Nov. 20, 2015).  Given this Court's duty to construe *pro se* complaints liberally, however, the Court assumes for present purposes that Crabtree may simply mean to sue Clearwater County itself.

4

Appeals for the Eighth Circuit holds that when a complaint does not specify whether a plaintiff sues a defendant in his or her individual capacity, official capacity, or both, district courts should assume that the relevant claims are official-capacity claims only. *See, e.g.*, *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (citing and quoting cases); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing cases). Here, the Complaint does not specify the capacity in which Crabtree is suing Olson or the "Clear Water Prosecutor," so the claims against them are official-capacity claims only.

As the U.S. Supreme Court has noted, "[i]n an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office . . . ." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) (citing cases); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (making same point (quoting *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998))). In effect, then, Crabtree's claims against Olson and the prosecutor are claims against Clearwater County itself.

To state an official-capacity claim under § 1983, a plaintiff must allege that the relevant governmental entity itself caused a constitutional violation—that is, the entity cannot simply be held vicariously liable for its employees' actions. *See, e.g.*, *Brewington*, 902 F.3d at 801–02 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Crabtree must show, then, that Clearwater County or Roseau County themselves caused constitutional violations. Such governmental-entity liability can result from "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016) (cleaned up)); *see*

5

*also, e.g.*, *Aery v. Cremens*, No. 20-CV-0055 (JRT/ECW), 2021 WL 536269, at *7 (D. Minn. Jan. 28, 2021) (quoting *Jackson*), *report and recommendation adopted*, 2021 WL 1187259 (D. Minn. Mar. 30, 2021). Here, the Complaint (even including the materials from the First and Second Mailings) does not discuss any policy, custom, or failure to train or supervise. The Complaint therefore fails to state any official-capacity claims against Clearwater County or Roseau County.

This Court thus recommends dismissing without prejudice Crabtree's claims against Defendants Clearwater County Sheriff's Office, Olsen, "Clear Water Prosecutor," and "Rouso County."

### C.   Claims Against Iverson

What remains are the Complaint's claims against Iverson. The Complaint does not suggest that Iverson is a government employee or otherwise connected to a relevant government. What the Complaint does allege is that Iverson made misrepresentations to government officials, who then arrested Crabtree.

Section 1983 states, in relevant part, that "[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983 (emphasis added). The under-color language is key: plaintiffs can use § 1983 only to remedy deprivations performed "under the color of law." *See, e.g.*, *West v. Atkins*, 487

U.S. 42, 48 (1988) (citing cases); *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

A private individual acts under color of law for § 1983 purposes—and, as relevant here, can be deemed a "state actor"—if his or her conduct "is 'fairly attributable to the State.'" *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting *Lugar*, 457 U.S. at 937); *see also, e.g.*, *Davis v. Buchanan Cty.*, 11 F.4th 604, 617 (8th Cir. 2021) (quoting *Filarsky*). "What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001); *see also, e.g.*, *Campbell v. Reisch*, 986 F.3d 822, 825 (8th Cir. 2021) (quoting *Brentwood Academy*). By way of illustration, the Supreme Court has discussed the point as follows:

> Our cases have identified a host of facts that can bear on the fairness [attributing conduct to the State]. We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," when the State provides "significant encouragement, either overt or covert," or when a private actor operates as a "willful participant in joint activity with the State or its agents[.]" We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," when it has been delegated a public function by the State, when it is "entwined with governmental policies," or when government is "entwined in [its] management or control[.]"

*Brentwood Acad.*, 531 U.S. at 296 (citations omitted). For its part, the Eighth Circuit has observed that "the one unyielding requirement is that there be a close nexus not merely between the state and the private party, but between the state and the alleged deprivation itself." *Meier v. City of St. Louis*, 934 F.3d 824, 829 (8th Cir. 2019) (quoting *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (cleaned up)).

Applying these standards, this Court concludes that Iverson's alleged conduct here is not fairly attributable to any relevant governmental entities. At most, Crabtree alleges that Iverson lied to government authorities, causing them to arrest and detain him. But Iverson himself did not detain Crabtree, nor are there any allegations that government officials encouraged Iverson or conspired with him to secure his testimony. Similarly, nothing suggests that Iverson, when providing information to authorities, acted like a state agency, performed some public function of the state's, or was plausibly "entwined" with government policies or government control. Furthermore, while this Court is unaware of any binding Supreme Court or Eighth Circuit precedent on point, what cases it has found suggests private citizens giving information to government authorities is not conduct under color of law for § 1983 purposes.[2] This Court thus recommends dismissing the Complaint's § 1983 claims against Iverson.

### D.   Conclusion

Under the preceding analysis, this Court recommends dismissing the Complaint's § 1983 claims against all of this action's defendants. This Court is obliged to construe a

---

[2] *See, e.g.*, *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1157 (10th Cir. 2016) ("[W]e have consistently held that furnishing information to law enforcement officers, without more, does not constitute joint action under color of state law." (citing cases)); *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law.'" (citing cases)); *Larson v. Goodman*, No. 09-CV-3600 (PAM/AJB), 2010 WL 4568042, at *9 (D. Minn. Sept. 28, 2010) ("Individuals who report crimes and testify as witnesses are not state actors for the purpose of § 1983 claims." (citing cases, including *Moldowan*)), *report and recommendation adopted*, 2010 WL 4537932 (D. Minn. Nov. 3, 2010).

*pro se* complaint liberally, but this Court is unaware of any other causes of action for which the Complaint states a claim for which this Court can grant relief.³ This Court therefore concludes that the Complaint should be dismissed in its entirety for failure to state a claim. Given this conclusion, this Court further recommends denying the IFP Application as moot.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff Brian Crabtree's Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983 (Doc. No. 1) be **DISMISSED** without prejudice for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).

2. Crabtree's Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. No. 2) be **DENIED** as moot.

Dated: March 3, 2022                             *s/ Becky R. Thorson*
                                                 BECKY R. THORSON
                                                 United States Magistrate Judge

---

³ This Court acknowledges that the First Mailing suggests that Iverson comments to authorities about Crabtree were slanderous. (*See* First Mailing 1.) Slander is a state-law cause of action, however, and without any obvious source of federal jurisdiction over this action, this Court declines to exert supplemental jurisdiction over a potential slander claim. This Court need not—so will not—address the possible merits of this claim.

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).